McCALEB, Justice.
 

 The plaintiffs, Joseph A. Martin and William Toups, brought this action against the defendant, Mrs. Thomas G. Markley, for the recovery of damages sustained by them as a result of the publication, in “The Iberville South”, a weekly newspaper published in Plaquemine, Louisiana, of an alleged libelous letter written by the defendant to the editor of the newspaper.
 

 In their petitioh, plaintiffs alleged, in substance, as follows: That they are public officers, holding positions as Deputy Sheriffs for the Parish of Iberville; that the duties required of them by virtue of their offices are grave and important; that the performance of these duties are such as to require the confidence and good will of the public generally and that they have discharged the duties of their offices honorably and efficiently. That, on March 14, 1941, the defendant wrote to, and caused to be published in, “The Iberville South” of
 
 *296
 
 Plaquemine, Louisiana, the following libelous matter, to wit:
 

 “Iberville South
 

 “Plaquemine, La.
 

 “Dear Editor:
 

 “As a subscriber to your paper and as a citizen of Iberville Parish in an effort to keep the records straight I wish to correct and amplify an article appearing in your February 21 issue relative to the killing of my faithful servant Nace Harris by the Sheriff’s department.
 

 “In your article you state that a deputy sheriff killed this negro advancing upon him with a drawn knife. I wish to state I was an eye-witness to this tragedy, which I consider a blot on law and justice. I would like to call attention to the fact that two deputy sheriffs came to my house at 1:30 p. m. on February 19 stating they had a warrant for the arrest of my servant Nace Harris. Upon seeing the negro, who by the way was most pitiably crippled, Deputy Martin started running and shooting' almost immediately in my yard, terrifying the innocent negro and jeopardizing my stock. The negro kept running. Deputy Toups at the first shot joined in the chase shooting indiscriminately. They ran the frantic negro to a large tree where he stopped, partly due to his lameness and in response to my screams to ‘stop’. The officers were approximately 10 to 12 feet from the cornered man. At this point, Deputy Toups claims the negro advanced with a drawn knife. Instead of the negro advancing, the deputy advanced. I saw no drawn knife and neither did numerous other eyewitnesses. The negro had assumed an attitude of surrender. Deputy Toups then fired a bullet into his head which killed him instantly. I was petrified. I could hardly believe my eyes and for a few seconds thought the man must have fainted. The knife found by the body, and incidentally by the negro’s left hand, was a very small little pocket knife which I myself had given him and paid twenty-five cents for.
 

 “By the sheriff’s office, own admission the negro had never been in trouble before. The warrant they were endeavoring to execute was made by another negro and again by the Sheriff’s office admission regarded as ‘negligible’.
 

 “Mrs. T. G. Markley.”
 

 It was averred that “The Iberville South” has a wide circulation; that the edition of March 14, 1941, was read by a great number of persons, particularly the above quoted letter of the defendant; that said letter was false and untrue in whole or in part by its direct statements and its innuendoes ; that it was written and published by the defendant wilfully and maliciously and with full knowledge that what she wrote was false and untrue; that the direct statements contained therein, as well as the inescapable innuendoes, purport to charge petitioners, and each of them, with joint participation in the killing of the negro, Nace Harris, under circumstances and conditions as to make it appear that petitioners murdered the negro and that, for that reason, the said letter is libelous per se.
 

 Plaintiffs further alleged that the publication by the defendant of the libelous matter has caused them mental anguish, humili
 
 *298
 
 ation and embarrassment and that the effect thereof has seriously prejudiced them, both as individuals and public officials, and will gravely impair their rights as citizens to earn a living for themselves and their families. Wherefore, each of the plaintiffs pray for judgment in damages against the defendant in the sum of $25,000.
 

 In due course, the defendant appeared and excepted to plaintiffs’ petition on the ground that it was vague and indefinite, because plaintiffs' had merely alleged that the libelous matter was false and untrue in whole or in part, without stating any particulars, and they requested that they be informed as to what portions of the letter were false and libelous. This exception was overruled by the trial judge and the defendant thereafter filed her answer in which she admitted writing the letter to the editor of “The Iberville South” and its subsequent publication in that newspaper. She, however, pleaded that the contents of the letter were true and that she was therefore justified in causing it to be published. She further asserted that she was not liable to the plaintiffs for the reason that the matter contained in her letter had reference to the performance of the official acts of the plaintiffs which was a matter of public concern; that she made the statements contained therein in the interest of the public and without malice and that, therefore, the letter was a privileged communication and not actionable at law.
 

 On the issues thus joined, a trial was had at which certain evidence was adduced in support of the pleadings.
 

 After due consideration of the matter, the judge of the lower court concluded that, as the defendant had specially pleaded justification as a defense to plaintiffs’ claim, it was incumbent upon her to prove the truth of the- statements of fact contained in her letter. And, finding that the defendant had failed to offer evidence to establish this defense, the judge held that she was liable to plaintiffs for the damages which they had suffered. Accordingly, he granted judgment in favor of the plaintiffs and awarded each of them the sum of $500. The defendant has appealed from the adverse decision and the plaintiffs have answered the appeal, praying for an increase in the amount of the awards in their favor.
 

 In seeking a reversal of the judgment, the defendant maintains that the judge of the lower court erred in the following particulars :
 

 (1) In failing to sustain her exception of vagueness;
 

 (2) in failing to hold that the letter published by her was a privileged communication and was, therefore, not libelous, and
 

 (3) in failing to hold that the evidence in the case was sufficient to establish the truth of the statements contained in the letter.
 

 Defendant’s first contention is that the judge should have sustained her exception of vagueness and required the plaintiffs to particularize in their pleadings the part of the alleged libel which was false. Defendant says that she was entitled to specific
 
 *300
 
 information as to which portions of her letter were claimed to be incorrect in order that she could properly defend the suit.
 

 In order to determine the soundness of this proposition, it becomes necessary to decide whether the matter contained in defendant’s letter is libelous per se, or whether it is merely libelous per quod. If it is libelous per se, the law presumes that it was false and malicious and plaintiffs’ allegation that it was false in whole or in part may be regarded as surplusage. On the other hand, if the writing is actionable per quod, then an allegation respecting falsity and malice is essential and, being essential, it of course follows that the defendant would be entitled to be informed as to what part or parts of the statement are false in order to prepare her defense. See- 33 American Jurisprudence, Verbo Libel & Slander, Sections 242, 266 and 274 and authorities there cited.
 

 To ascertain whether the writing in the instant case is libelous per se, examination must be made of the charges uttered by the defendant with a view of discovering whether they may be regarded as defamatory without the aid of extrinsic proof— that is to say, whether the statements made are susceptible of but one meaning.
 

 The letter states, in substance, that the defendant, being an eye witness to the killing of her negro servant, was impelled to write it in order to correct and amplify a previous article which had appeared in “The Iberville South”. It is then stated by defendant that the deputy sheriffs came to her home on February 19th for the purpose of arresting Nace Harris on a “negligible” charge;' that as soon as Deputy Martin saw the negro, he immediately started running after him and shooting his revolver; that Deputy Toups joined in the chase, shooting indiscriminately; that the frantic negro ran to a large tree where he stopped, partly due to his lameness and in response to defendant’s screams and that, when the pursuing officers were approximately ten to twelve feet from the cornered man (who had assumed an attitude of surrender), Deputy Toups advanced and fired a bullet into his head which killed him instantly.
 

 There can be no doubt as to the import of the statements contained in defendant’s letter. They are susceptible of but one meaning — i.e., that the officers killed defendant’s negro servant without just cause, as she makes if very clear in her letter that the negro had assumed an attitude of surrender at the time the fatal shot was fired.
 

 It is well settled in the jurisprudence that words used which impute crime to another are actionable per se and it is not necessary that the statement made should charge the offense with the technical accuracy required in an indictment or that the charge be made in express terms. If the statement taken. in its natural and ordinary signification fairly imports the. commission of a crime, it is sufficient. See 36 Corpus Juris, section 27, page 1161, et seq., and section 101, pages 1192 and 1193. At page 1203 of the same volume (section 131), it is stated:
 

 “It' is libelous per se to .charge one with unlawfully causing the death of another.
 
 *302
 
 So any words containing a,direct charge ■of murder, or' imputing that one is suspected of the crime,
 
 or stating facts sufficient to show a felonious killing,
 
 are actionable per se.” (Italics ours.)
 

 Since the letter written by the defendant plainly imputes that the plaintiffs jointly participated in the commission of an unlawful homicide and was therefore libelous per se, it was unnecessary for plaintiffs to allege or prove that the statements contained therein were false and untrue, or made by her with malice. In such instances the law presumes the falsity of the statement and that it was uttered with malice and the burden was on the defendant to prove the truth of her assertions. See 33 American Jurisprudence sections 242, 266 and 274. Hence, plaintiffs’ allegations respecting the falsity of the writing are to be regarded as surplus-age. The District Judge was, therefore, correct in overruling the exception of vagueness.
 

 The next contention of the defendant is that the statements and comments made by her in her letter are privileged communications and that, consequently, the judge was in error in finding that she was responsible to plaintiffs for the damages they allegedly sustained. Defendant’s counsel concede, in their oral argument and in brief, that the alleged privilege enjoyed by the defendant was not absolute, but of a qualified nature. But, relying upon the well-recognized doctrine of qualified privilege which permits newspapers and the public generally to engage in free discussion of the manner in which-public officers discharge their duties and to make fair criticism of, and comment on, their official acts,' counsel maintain that the letter is not libelous because it falls squarely within the category of the privilege to which defendant was entitled under the law. In support of' this proposition many authorities are cited by counsel, including Addington v. Times Publishing Co., 138 La. 731] 70 So. 784; Egan v. Signal Publishing Co., 140 La. 1069, 74 So. 556; Hall v. Ewing, 140 La. 907, 74 So. 190; Flanagan v. Nicholson Publishing Co., 137 La. 588, 68 So. 964, L.R.A.1917E, 510, Ann.Cas.1917B, 402; Smith v. Lyons, 142 La. 975, 77 So. 896, L.R.A.1918E, 1; Law of Journalism, Jones, 1940 Ed., sections 36 and 37, page 101; The Law of Libel & Slander by Seelman, section 284(a), page 238; Newell on Libel & Slander, 4th Ed., section 421, page 445 and 36 Corpus Juris, section 281, page 1280.
 

 All of the foregoing authorities recognize the doctrine of qualified privilege respecting fair comment and criticism of public officers and men in public life. We do not question the soundness of the doctrine. However, counsel for defendant have overlooked the principle upon which the rule of fair comment is founded. The defendant undoubtedly enjoyed the right, as a citizen, to criticize the conduct of the plaintiffs respecting the manner in which they discharged their duties, providing the comments were based upon a true or an admitted state of facts. But the privilege does not extend to the publication of false statements of fact concerning public officers. See Cadro v. Plaquemine Gazette
 
 *304
 
 Inc., et al., La.Sup., 11 So.2d 10.
 
 [1]
 
 The right accorded extends only to fair comment, but not to falsity in the assertion of facts. In the instant case, the comment made by the defendant, that the acts of the plaintiffs in connection with the killing of Nace Harris are “a blot on law and justice”, is fully justified provided that the facts upon which the conclusion is founded are true. But since the facts stated in defendant’s letter, that, as an eye witness to the tragedy, she saw the fatal shot fired while Nace Harris was in a helpless state and had assumed an attitude of surrender, are defamatory per se, the burden rested upon 'her to prove to the satisfaction of the court the truth of these facts in order for her to claim the asserted privilege of fair comment.
 

 In Law of Journalism by R. W. Jones, page 99, paragraph 35, it is stated:
 

 “Fair Comment and Criticism. The second defense to be discussed, fair comment and criticism, is one that is closely akin to truth, for, manifestly, no untruth can be the basis of fair criticism. The expression of an opinion which carries with it the imputation of wrongdoing is as much libelous as a direct charge of wrongdoing.
 

 “The statements of fact commented on must be true if the defense of fair comment and criticism is to be available.
 

 “Anything of public interest and importance may be fairly commented on and fairly criticized. The comment and criticism may be adverse, but
 
 must
 
 be fair.
 
 In order to be fair the facts involved must warrant the comment or criticism made, and so truth is involved in the defense
 
 (Italics ours.)
 

 In State v. O’Donnell, 141 La. 887, 75 So. 811, 814, this Court, speaking through Mr. Justice Provosty, recognized the distinction between assertion of existing facts and
 
 comment
 
 upon supposedly existing facts and cites with approval the text of Odgers on Libel, 5th Ed., page 197, thus:
 

 “ ‘A comment, as we have already stated, is the expression of the judgment passed upon certain alleged facts by one who has applied his mind to them, and who, while so commenting, assumes that such allegations of fact are true. The assertion of a fact is not a comment at all. If the words complained of contain allegations of fact which are denied by the plaintiff,
 
 and which the defendant cannot prove to be true,
 
 there must be a verdict for the plaintiff. It is of no avail for the defendant to urge that he honestly believed them to to be true.
 

 “ ‘Comment on well-known or admitted facts is a very different thing from
 
 the assertion of unsubstantiated facts for comment.
 
 There is no doubt that the public acts of a public man are lawfully made the subject of fair comment or criticism, not only by the press, but by all members of the public. But the distinction cannot be too clearly borne in mind between comment or criticism and allegations of fact, such as that disgraceful acts have been committed, or discreditable language used. It is one thing to comment upon or criticise, even with severity, the acknowledged or proved
 
 *306
 
 acts of a public man,
 
 and qiiite another to assert that he has been guilty of particular acts of misconduct’
 
 ”(Italics ours.)
 

 In 36 Corpus Juris, Verbo Libel & Slander, section 289, page 1283, in discussing the question of false statements of fact •with reference to privileged communications, it is declared:
 

 “But there is a distinction between an ordinary privileged communication and the so-called privilege of fair comment or criticism. What the interest of private citizens in public matters requires is freedom of discussion rather than of statement. What is privileged, if that is the proper term, is the criticism or comment,
 
 not the statement of facts on which it is based.
 
 Generally speaking, comment or criticism must be founded on truth. While ordinarily it does not consist of the assertion of facts, an allegation of fact may be justified by its being an inference from other facts
 
 truly stated. The right to comment or criticise does not extend to, or justify, allegations of fact of a defamatory character.”
 
 (Italics ours.)
 

 Thus, it is to be observed from the foregoing authorities that the qualified privilege claimed by the defendant was limited to the conclusions drawn by her from the statements of fact contained in her letter. And since those statements of fact, as we have above pointed out, -were of a defamatory character, the burden rested upon her to justify them by proving that they were true. Hence, it follows that the district judge was correct in rejecting the defendant’s plea of privilege unless it be, as she maintains, that the evidence submitted in' the case is sufficient to warrant the conclusion that the defamatory assertions of fact contained in her letter are true.
 

 We therefore consider the defendant’s final proposition, i.e., that the evidence shows that the statements of fact 'Contained in her letter are correct. An investigation of the record discloses that the evidence submitted at the trial is quite meager. None of the parties litigant • testified in their own behalf. In fact, the only testimony contained therein, other than certain evidence which has no bearing on the plea of justification, is that of the defendant, herself, while under cross-examination of counsel for the plaintiffs. An examination of her testimony reveals that it is wholly insufficient to prove the truth of the assertions of fact contained in her letter to the newspaper. She merely stated, under questioning by plaintiffs’ counsel, that she had written the letter in controversy; that the slain negro had been in her employ for a number of years; that she was present when the plaintiffs came to her home on February 19, 1941, to serve the warrant of arrest for the negro; that she was also present when the officers attempted to execute the warrant and when the shooting occurred, and that she thereafter complained to Sheriff Blanchard of Iberville .Parish respecting the conduct of the plaintiff Toups at the time the negro was killed. She was neither asked nor did she comment upon the correctness of the statements contained in her letter where she detailed in full everything that she allegedly witnessed.
 
 *308
 
 In view of this, we are unable to say whether the defamatory assertions of fact contained in her writing are true or false.
 

 In the present condition of the record, we would be justified in affirming the judgment of the district court in plaintiffs’ favor, since we find that the defendant has not submitted any proof to show the correctness of the allegations of fact contained in her letter. However, it clearly appears from the record in the case, and the arguments made orally and in brief by defense counsel, that counsel sincerely (though erroneously) believe that the burden was upon the plaintiffs to show the falsity of the statements of fact contained in defendant’s letter and that, for that reason, they rested their case without putting their client on the witness stand for the purpose of attempting to prove the truth of the contents of her writing. Because of this, a full hearing on the facts of the case was not obtained and it is obvious that justice cannot be done between the parties with the record in its present state. The charges made by the defendant against the plaintiffs are most serious and highly defamatory and, if they are untrue, plaintiffs are entitled to redress. On the other hand, we feel that, since it is conceded that the negro was killed in the presence of the defendant, she ought to be given the opportunity to prove, if she can, the truth of the accusations made by her. Indeed, we can hardly believe that she would have failed to have made an attempt to justify her charges had it not been for the mistaken (but sincere) opinion of her counsel that the burden of proof was upon the plaintiffs to show the falsity of the statement and that it was malicious. In these circumstances, the demands of justice require that the case be remanded to the trial court for further proceedings so that defendant may produce proof concerning the truth of the defamatory utterances and also to allow the plaintiffs to rebut whatever testimony she gives by appropriate evidence.
 

 For the reasons assigned the judgment appealed from is reversed and it is now ordered that the case be and it is remanded to the Eighteenth Judicial District Court for the Parish of Iberville for further proceedings in accordance with law and not inconsistent with the views herein expressed. The costs of this appeal are to be borne by the defendant and appellant, other costs to await the final determination of the cause.
 

 O’NIELL, C. J., is of the opinion that the defendant’s plea of vagueness was well founded, that she was entitled to know what part of her narrative was alleged by the plaintiffs to be untrue, and that on the merits of the suit as submitted it should have been dismissed.
 

 ODOM, J., concurs in the decree annulling the judgment and remanding the case but does not concur in the’ opinion as a whole.
 

 ROGERS, J., absent.
 

 [1]
 

 202 La. 1.