352 So.2d 379 (1977)
SHYLOCK, INC., d/b/a the Quarterdeck Restaurant
v.
COVENANT BROADCASTING CORPORATION OF LOUISIANA, d/b/a Radio Station WGSO and Thomas G. Fitzmorris, a/k/a Mister Food.
No. 8456.
Court of Appeal of Louisiana, Fourth Circuit.
November 10, 1977.
Rehearing Denied December 13, 1977.
Writ Refused January 30, 1978.
*380 Roger B. Jacobs, New Orleans, for plaintiff-appellant.
Robert M. Johnston, New Orleans, for defendants-appellees.
Before STOULIG, BOUTALL and BEER, JJ.
BEER, Judge.
Appellant, Shylock, Inc. (hereafter, "Quarterdeck"), operates the Quarterdeck Restaurant.
Appellee, Covenant Broadcasting Corporation (hereafter, "Covenant"), operates radio station WGSO, where their employee, Thomas G. Fitzmorris, presents a program known as "Mister Food" on which he presents his unsolicited opinion of the food, service, selections, etc. at various local restaurants.
In his February 27, 1976 broadcast, Fitzmorris discussed the Quarterdeck and, in the course of same, stated:
"On the menu is a mixed grill, which is good veal, steak, lamb, and liver, all served together, and which unfortunately bears the same name as a kind of cat food which you can find at your neighborhood supermarket."
These comments, part of a more complete description, were alleged to be defamatory even though without actual malice (since that contention was not affirmatively alleged) and to have resulted in damages to reputation and business of Quarterdeck in the amount of $100,000.
Defendants' motion for summary judgment was based upon a record consisting of the depositions of William Rip Shylock, owner and operator of Quarterdeck, and of Fitzmorris, as well as a verified transcript of Fitzmorris' full statement.
The motion was granted in accordance with the rule stated in Joiner v. Lenee, 213 So.2d 136 (La.App. 3rd Cir. 1968), writ ref., 252 La. 960, 215 So.2d 129, which tells us that:
"If the mover at the trial of a motion for summary judgment produces convincing proof, by affidavits or other receivable evidence, of the facts upon which the motion is based, and no counter-affidavits or other receivable evidence are offered by the opposing party to contradict that proof, then a conclusion may be justified that there is no genuine issue as to the facts so proved, even though allegations to the contrary might be contained in the pleadings." Id., at 139. Accord, Garlington v. Kingsley, 277 So.2d 183 (La.App. 3rd Cir. 1973), reversed on other grounds, La., 289 So.2d 88.
Quarterdeck offered no evidence seriously contradicting the facts concerning the broadcast but its able counsel suggests that *381 the trial court committed error by failing to apply the rule of Mashburn v. Collin, 341 So.2d 1236 (La.App. 1st Cir. 1976), writ granted, La., 343 So.2d 1074. In that case, our brothers in the First Circuit concluded that a restaurateur is not a public figure, but rather is a private person who need not allege and prove actual malice to recover in a defamation action. Counsel also points out that the U.S. Supreme Court, in Gertz v. Robert Welch, Inc., 418 U.S. 323, 94 S.Ct. 2997, 41 L.Ed.2d 789 (1974), has obviated the requirement of actual malice if plaintiff is a private person.
However, appellees contend that Gertz, supra, is inapplicable since appellant here is a corporation and not a private person. See, e. g., Martin Marietta Corp. v. Evening Star Newspaper Company, 417 F.Supp. 947 (D.D.C.1976).
Assuming arguendo that appellant is a private person, we do not find that the Gertz holding results in exempting appellant in this case from proving actual malice as is required under Louisiana law, which is more fully discussed hereinbelow.
The Gertz decision was rendered in an attempt to clarify previous Supreme Court decisions concerning the extent of the First Amendment constitutional privilege against liability for defamatory statements by newspapers and broadcasters. Specifically in question was the prior plurality opinion in Rosenbloom v. Metromedia, Inc., 403 U.S. 29, 91 S.Ct. 1811, 29 L.Ed.2d 296 (1971), which had extended the constitutional privilege to "all discussion and communication involving matters of public or general concern." Id., at 44, 91 S.Ct. at 1820. The Gertz court, through Justice Powell, noted that under Metromedia and prior decisions, "a private citizen involuntarily associated with a matter of general interest has no recourse for injury to his reputation unless he can satisfy the demanding requirements of the New York Times test." Id., 418 U.S. at 337, 94 S.Ct. at 3006.
In attempting to find a more equitable balance between the legitimate state interest in compensation of individuals for harm inflicted on them by defamatory falsehoods and, on the other hand, the strong protection afforded free speech and publication under the First Amendment, the Gertz court concluded that the constitutional privilege enunciated in New York Times v. Sullivan, 376 U.S. 254, 84 S.Ct. 710, 11 L.Ed.2d 686 (1964), which requires a showing of actual malice, should not extend to private individuals seeking to recover actual damages in a libel action. In so holding, the court expressed the view that the First Amendment privilege did not extend as far as previously had been thought. However, it did not mandate that each state do away with a requirement under state law that malice be shown. On the contrary, Justice Powell remarked:
"We hold that, so long as they do not impose liability without fault, the States may define for themselves the appropriate standard of liability for a publisher or broadcaster of defamatory falsehood injurious to a private individual. This approach provides a more equitable boundary between the competing concerns involved here. It recognizes the strength of the legitimate state interest in compensating private individuals for wrongful injury to reputation, yet shields the press and broadcast media from the rigors of strict liability for defamation." Id., 418 U.S. at 347, 94 S.Ct. at 3010, 3011 (footnotes omitted).
Observing that the Gertz holding leaves intact state defamation law as long as it does not impose liability without fault, we turn to consideration of Louisiana defamation law insofar as it requires a showing of malice.
The essential elements of a defamation action under Louisiana law are (1) defamatory words; (2) publication, that is, communication to some person other than the one defamed; (3) falsity; (4) malice, actual or implied; and (5) resulting injury. Carter v. Catfish Cabin, 316 So.2d 517 (La. App. 2nd Cir., 1975).
With regard to the requirement of malice, it is a well-established rule of law that where words are considered defamatory *382 per se, malice is inferred from the mere fact of their publication. On the contrary, words defamatory per quod do not impute malice. See, Comment, 28 La.L.Rev. 82, 100 (1967). This rule was stated in Martin v. Markley, 202 La. 291, 11 So.2d 593, 596 (1942), as follows:
"In order to determine the soundness of this proposition, it becomes necessary to decide whether the matter contained in defendant's letter is libelous per se, or whether it is merely libelous per quod. If it is libelous per se, the law presumes that it was false and malicious and plaintiffs' allegation that it was false in whole or in part may be regarded as surplusage. On the other hand, if the writing is actionable per quod, then an allegation respecting falsity and malice is essential and, being essential, it of course follows that the defendant would be entitled to be informed as to what part or parts of the statement are false in order to prepare her defense." (Citations omitted.)
In the instant case, plaintiff has not alleged actual malice. In its brief here, it is contended that the words complained of were defamatory per se, and malice is to be inferred. Thus, the issue before us is whether the words were defamatory per se, permitting an inference of malice.
The meaning of "defamatory per se" was set forth in the often quoted case of Madison v. Bolton, 234 La. 997, 102 So.2d 433 (1958), wherein the court said:
"Words charged to be libelous have been classified as those that are susceptible of a defamatory meaning and those that are indisputably defamatory on their face. In the latter category they are actionable per se; they impute to the person the commission of a crime or subject him to public ridicule, ignominy or disgrace, and are susceptible of but one meaning. Words not actionable per se fall short of those requirements, and are found in numerous categories, among which are words that are actionable only in consequence of extrinsic facts, in which case the surrounding circumstances and conditions must be taken into account to determine the matter, or statements that contain language which unjustifiably tends to injure the reputation of a person, or reflect shame and disgrace upon him. The intent and meaning of an alleged defamatory statement must be gathered not only from the words singled out as libelous, but from the context as well, and the true meaning must be ascertained from a consideration of all parts of the statement as well as the circumstances of its publication. The test is the effect the article is fairly calculated to produce, the impression it would naturally engender, in the minds of the average persons among whom it is intended to circulate." Id., at 437, 438 (footnotes omitted) (citations omitted).
We find no manifest error in the trial court's legal conclusion that the words were not libelous per se (and that malice cannot be presumed).
Alternatively, appellant argues (although he has not plead malice) that Fitzmorris' lack of concern for the consequences of his remarks constituted constructive malice. Fitzmorris' deposition testimony, under cross-examination, shows:
"EXAMINATION BY MR. JACOBS:
Q. You, at no time, ever considered the possibility that this would be considered as cat food?
A. I considered the possibility, and for that reason, I worded the sentences as precisely as I did.
Q. You did considerdid you consider eliminating the reference to cat food?
A. I considered it on the basis that I didn't want, obviously did not want to say that the place served cat food. What I consideredwell, it is a writer's thing. I am considering things like that all the time. For example, I say, `Escargots are excellent,' not escargots are good or very good. I considered what I wanted to say, and I said what I wanted. My language was very precise. I said actually what I wanted to say. I considered probably in a passive way that I *383 didn't want to say anything else, so, I said what I said."
There is no refutation of the implied contention that Fitzmorris carefully chose his words in an effort to avoid defamatory results and, therefore, appellant's contention of constructive malice raises no fact issue to be resolved on the merits.
Likewise, and notwithstanding Mashburn, supra., we find no disputed factual issue, nor any error of law, existent in the trial court's granting of the motion. Though we cannot categorically define that point at which comments such as are here complained of constitute a factual issue vis-a-vis libel and slander, we are convinced that the trial court did not err in concluding that these particular words fall short, as a matter of law. (Note our opinion in Mitchell v. Truck Service, Inc., La., 286 So.2d 112 (1973).
Parenthetically, we observe that Fitzmorris' remarks were inept and, in fact, displayed a basic and obvious ignorance with respect to the matters addressed. However, simple ineptitude and lack of skill do not obviate First Amendment protection as a matter of law. The motion was properly granted and is affirmed. Each party to this appeal will pay its own costs.
AFFIRMED.