614 So.2d 228 (1993)
Gertie Bonin DUGAS, Plaintiff-Appellant,
v.
ADOPTION OF Scotty Jude DUGAS, Defendants-Appellees.
No. 91-1401.
Court of Appeal of Louisiana, Third Circuit.
February 3, 1993.
*229 Keith Comeaux, New Iberia, for plaintiff-appellant.
Harris & Racca, Michael A. Harris, Breaux Bridge, for defendants-appellees.
Before LABORDE, THIBODEAUX and WOODARD, JJ.
WOODARD, Judge.
The issues on appeal in this case are (1) whether the provisions of La.R.S. 9:422.7 were properly complied with, (2) whether Gertie Dugas lacked capacity to sign the Act of Voluntary Surrender as natural tutrix and, (3) whether consent for adoption was obtained through misrepresentation or fraud.
On October 12, 1989, Gertie Bonin Dugas signed a Voluntary Act of Surrender before a practicing attorney. On the same date, Gertie Bonin Dugas applied to be named tutrix of the minor child, being the maternal grandmother of this illegitimate child, Scotty Jude Dugas, born March 13, 1982. Mrs. Dugas' daughter was the natural mother of this child, but died on November 6, 1988. Scotty Jude Dugas lived with Mrs. Dugas until the Act of Surrender was signed. Mrs. Dugas was confirmed as tutrix by the Court on October 26, 1989.
John Leroy Zeising and Barbara Potier Zeising applied for adoption of the child on October 26, 1989. An Interlocutory Decree was filed on December 11, 1989. The Department of Public Welfare issued the necessary report in support of the final decree.
A hearing on the Final Decree was held on June 13, 1991. Objections were raised and heard regarding the final decree, but a Judgment of Final Decree was entered on the same date. It is from this Judgment that Gertie Bonin Dugas timely appeals.

LAW
The first issue this court will address is whether the provisions of La.R.S. 9:422.7 were followed as required.
La.R.S. 9:422.7 provides:
A. The authentic act of voluntary surrender shall not be signed or executed earlier than the fifth day following the date of the birth of the child to be surrendered. In counting the five day period, the date of birth shall not be included and the days shall be consecutive calendar days, including weekends and holidays. The surrendering parent or parents, and his, her, or their legal representative, if applicable, or the child's tutor, as provided in R.S. 9:422.3(A), shall be represented at the execution of the act by an attorney at law licensed to practice law in Louisiana; provided, however, the attorney representing such person or persons shall not be the attorney who represents the person or persons who are the prospective adoptive parents, or an attorney who is a partner or employee of the attorney or law firm representing the prospective adoptive parents.
B. The attorney for the surrendering parent or parents, or their legal representatives, if applicable, and the attorney representing the adoptive parent or parents who wish to remain anonymous, shall sign the act of surrender in the manner prescribed in R.S. 9:422.6. (emphasis added)
Plaintiff contends that Michael A. Harris was the attorney who represented Defendants in the matter entitled "In Re: John Leroy Zeising and his wife, Barbara Potier Zeising, Applying for the Adoption of Scotty Jude Dugas," Docket No. 47,370 of *230 the records of St. Martin Parish, Louisiana. Additionally, plaintiff contends that Mr. Harris was also the attorney for Plaintiff who is the petitioner in the matter entitled, "Tutorship of Scotty Jude Dugas," Docket No. 10590, St. Martin Parish. Plaintiff asserts that this is in direct contravention of R.S. 9:422.7, which states that the attorney representing the child's tutor shall not be the attorney who represents prospective adoptive parents.
The Defendants contend that this statute speaks exclusively about the Act of Surrender and not collateral proceedings, and that the tutorship proceedings were opened on behalf of the Defendants in order to affirm the surrender.
The statute states that at the execution of the Act of Surrender the child's tutor shall be represented by an attorney, provided the attorney does not represent both the tutor and the prospective adoptive parents.
In the case sub judice, the record shows that Mrs. Zeising picked up Mrs. Dugas on October 12, 1989 and took her to the office of Judge Soileau who was to represent her in executing the Act of Surrender. Judge Soileau informed her of what the Act of Surrender was. The record further shows that after they left Judge Soileau's office, they went to Michael Harris's office. He was representing the Zeisings in the adoption matter. From the record, we find that Mrs. Dugas and the Zeisings were not represented by the same attorney during the execution of the Act of Surrender. Therefore, because the statute refers to the execution of the Act of Surrender and not collateral matters, we find this assignment of error without merit.

CAPACITY
In the next issue plaintiff contends that she lacked capacity to execute the Act of Surrender and therefore the act is invalid and the final act of adoption should not have been granted.
The record shows that on October 12, 1989, Plaintiff executed the Act of Surrender as the child's natural tutrix. The actual order appointing plaintiff as the child's natural tutrix was not signed until October 26, 1989, which was 14 days after she signed the Act. Thus, she did not possess legal capacity to execute the Act of Surrender at the time she did so.
Under La.C.C. Art. 1919, a contract made without legal capacity is a relative nullity. A relatively null contract may be confirmed. La.C.C. Art. 2031. The trial court found that Mrs. Dugas acquiesced to the signing of the document by not invalidating the document after she was appointed tutrix. In fact, Mrs. Dugas did not raise any objections to the adoption proceedings until March 11, 1991 which was one and one-half years after she first signed the Act of Surrender and some thirteen months after the Interlocutory Decree was granted. La.R.S. 9:422.10A gives the child's tutor only thirty (30) days from the execution of the Act of Surrender to oppose the Act. Further, under La.C.C. art. 1842 tacit confirmation may result from voluntary performance of the obligation. Thus, failing to object within this thirty (30) day time period and allowing the Interlocutory Decree to be entered without objection appears to be tantamount to a tacit confirmation regarding the Act of Surrender. We therefore agree with the trial court on the issue of capacity.

CONSENT
The last issue this court will address is whether the consent given was obtained through misrepresentation or fraud.
Gertie Dugas took custody and control of her grandson, Scotty, after his mother died in 1988. The child was six (6) years old at the time. The record reveals that Mrs. Dugas was approached by her son to consider giving Scotty up for adoption because she was getting up in age. The Zeisings were introduced to Mrs. Dugas and Scotty. Afterwards the Zeisings started spending time with Scotty. Mrs. Dugas testified that the Zeisings had suggested adoption but she told them she did not want to get rid of her little boy.
The evidence shows that promises were made to Mrs. Dugas that she could visit the *231 child anytime she wanted to. Furthermore, she was told that if she did not have a way to get to the Zeisings, they would take Scotty to see her. Mrs. Dugas grew to trust the Zeisings and consequently agreed to sign the Act of Surrender under those conditions.
On the day the Act of Surrender was signed, Mrs. Zeising picked up Mrs. Dugas and took her to Judge Soileau's office. The record shows that Judge Soileau asked Mrs. Dugas if she realized that she would be giving up her "grandma rights". The record indicates that at this point, Mrs. Dugas made a comment to the attorney and the Zeisings about being promised by the Zeisings that she could see Scotty anytime she wanted to, apparently wanting it to be clear that this was their agreement. She looked over to Mrs. Zeising for a response and Mrs. Zeising nodded her head indicating that this was correct. Mrs. Dugas then signed the Act of Surrender. It was also Mrs. Zeising's testimony that she did promise Mrs. Dugas that she could see the boy anytime and that she had reassured Mrs. Dugas at the time of the signing of the Act of Surrender that this was the agreement. Mrs. Dugas's son, Randy Paul Dugas, also testified that this had been his understanding of the agreement all along. Nevertheless, after the Act was signed, Mrs. Dugas was allowed to visit Scotty about two (2) times a week only until March of 1990 when Mrs. Zeising unilaterally decided that she did not want Mrs. Dugas to visit any more.
Notwithstanding, the trial court found that there was no vice of consent regarding the agreement. After a careful review of the testimony, we disagree with the trial court and find that the trial court was manifestly erroneous in deciding this issue.
This same issue was addressed In re: J.M.P., 528 So.2d 1002 (La.1988) under the heading of "Error, Fraud or Duress." The Supreme Court noted that under the Private Adoption Act of 1979 there was no stated method to set aside an Act of Surrender because of vitiated consent. However, the Act of Surrender is a contract, an agreement by two or more parties whereby obligations are created, modified, or extinguished. La.Civ.Code art. 1906. The consent necessary to execute the Act of Surrender may be vitiated by error, fraud or duress thereby setting aside the Act. La. Civ.Code art. 1948.
The Supreme Court went on to state at page 1008:
Error vitiates consent only when it concerns a cause without which the obligation would not have been incurred and that cause was known or should have been known to the other party. La.Civ. Code art. 1949. Error may concern a cause when it bears on the nature of a contract, or the thing that is the contractual object or a substantial quality of that thing, or the person or the qualities of the other party, or the law, or any other circumstance that the parties regarded, or should in good faith have regarded, as a cause of the obligation. La. Civ.Code art. 1950.
It is undisputed that Mrs. Dugas was promised by the Zeisings that she could visit or see Scotty anytime she wanted. Originally, Mrs. Dugas was not interested in giving up Scotty until the Zeisings began to promise that she could still be a part of his life in seeing him anytime. She was never told otherwise. Upon signing the Act of Surrender, the attorney simply told her that her "grandma rights" would be lost. "Grandma rights" could mean different things to different people. According to the testimony, it appears that the attorney made no effort to determine what this meant to Mrs. Dugas, nor did he say to Mrs. Dugas, "This means not only that you will no longer have the right to make decisions regarding the child's welfare; that only the adoptive parents will have that right and that he will no longer live with you, but it also means that you will never get to see or talk to him again". From her question to Mrs. Zeising, Mrs. Dugas obviously did not believe that giving up "grandma rights" included giving up her right to visitation, especially since she was reassured by Mrs. Zeising that she was correct in her understanding. It was after obtaining this reassurance that she signed the *232 agreement. Thus, her reason or cause for entering into this agreement was based on the fact that although she would terminate her legal rights to Scotty, she would still retain visitation rights. Had she not been assured of that, we feel she would not have signed away her legal rights to her grandson. Therefore we find that there was error as to the nature of the contract. Consequently, a party may rescind a contract when the error of cause is on the nature of the contract, on the thing that is the contractual object or on a substantial quality of that thing. La.C.C. Arts. 1950, 1952; Matter of Adoption of Smith, 578 So.2d 988 (La.App. 4 Cir.1991), writ denied 581 So.2d 687 (La.1991).
For the reasons stated, the judgment of the trial court is reversed. All costs to be paid by appellees.
REVERSED.