773 So.2d 289 (2000)
Donald W. ANDERS, Jr.
v.
Tracy ANDRUS.
Brian Boney
v.
Tracy Andrus.
Nos. 00-00552, 00-00553.
Court of Appeal of Louisiana, Third Circuit.
December 6, 2000.
Daniel G. Brenner, Bolen, Parker & Brenner, Ltd., Alexandria, Louisiana, Counsel for Plaintiffs/AppellantsDonald W. Anders, Jr. and Brian Boney.
Howard B. Gist, Jr., Gist, Methvin & Hughes, Alexandria, Louisiana, Counsel for Defendant/AppelleeOdyssey Reinsurance.
*290 Edward Larvadain, Alexandria, Louisiana, Counsel for Defendant/Appellee Tracy Andrus.
Court composed of JOHN D. SAUNDERS, JIMMIE C. PETERS, and GLENN B. GREMILLION, Judges.
PETERS, Judge.
Donald W. Anders, Jr., and Brian Boney, who are both Alexandria, Louisiana city police officers, filed separate suits against Tracy Andrus, wherein each man asserted that Andrus defamed him with comments made during a public forum. After consolidating their suits, both Anders and Boney joined Andrus' homeowner's insurance carrier, Odyssey Reinsurance Company (Odyssey), as a party defendant. This appeal is before us because the trial court granted Odyssey's motion for summary judgment and dismissed the insurer from the litigation. For the following reasons, we affirm the trial court's judgment in all respects.
The litigation arose because of comments made by Andrus at a June 21, 1999 public forum held in the Alexandria City Hall regarding the Alexandria Police Department's conduct. In his petition, Anders asserted that Andrus "stated that [Anders] had been arrested and charged with the crime of criminal neglect of family" two years before the forum. Anders further asserted that the statement was false, that it constituted defamation per se, and that Andrus made the statement "with actual or implied malice." Boney asserted in his petition that "Andrus stated that [Boney] had threatened to kill [him] in the elevator following [his] arrest" and that, while in the elevator, "Boney would make the event appear that Andrus had attempted to go for and obtain Boney's side arm."
Odyssey based its request for summary judgment relief on the specific language of its policy relative to excluded conduct. The policy provides personal liability coverage for any claim "brought against an `insured' for damages because of `bodily injury'... caused by an `occurrence'" as defined by the policy. However, the exclusions to the liability portion of the policy provide the following:
Personal Liability [coverage] ... [does] not apply to "bodily injury"...
a. Which is expected or intended by the "insured"....
Initially, Andrus denied the allegations of both petitions. In a deposition filed by the plaintiffs in opposition to the motion for summary judgment, Andrus stated that he did not remember making the statement concerning Anders, but admitted making the statement concerning Boney. However, he also testified in the deposition that it was another officer, and not Boney, who actually made the statements he attributed to Boney. Despite asserting that he did not remember making the comment concerning Anders, when questioned by plaintiffs' counsel concerning his motivation for making the statements attributed to him, Andrus had a clear recollection of the Anders comment and testified as follows:
A. My intention was clearly to reflect on the fact that Officer Anders in particular had some things in his past that were beyond reproach to him becoming an officer.
Q. Anything else?
A. And that the court has had to monitor him to make him pay for support of his child, something that he should automatically be doing without having to go through the court system and be charged with criminal neglect of family.
Q. Was it your intention to make him look less credible in the public eye?
A. Not less credible, just to reveal facts. It would be upon the public to determine how they are going to view him. I am only revealing facts.
When questioned in the deposition by his attorney concerning his motivation, the following exchange took place:

*291 Q. Reverend Andrus, do you have any envy or malice toward police officer Anders?
A. No sir, not at all.
Q. Any toward Boney....?
A. No, sir.
Q. When you made these [sic] the statement that you made, did you have any intention of maliciously harming them?
A. No, sir, not at all.
Andrus went on to say that, if he did state that Anders had been arrested for criminal neglect of family, "that was just a mess up on [his] part."
The trial court held that the statements alleged to have been made by Andrus were intentional torts and, therefore, the Odyssey policy provided no coverage. In their appeal, Anders and Boney contend the trial court erred in reaching this conclusion.

OPINION
Appellate courts review summary judgments de novo under the same criteria that govern the trial court's consideration of whether or not summary judgment is appropriate in any given case. Cormier v. Albear, 99-1206 (La.App. 3 Cir. 2/2/00); 758 So.2d 250. In Babin v. Winn-Dixie Louisiana, Inc., 00-0078, pp. 3-4 (La.6/30/00); 764 So.2d 37, 39-40, the Louisiana Supreme Court recently addressed the conditions under which a summary judgment should be granted:
A motion for summary judgment will be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to material fact, and that mover is entitled to judgment as a matter of law." La.Code Civ. P. art. 966(B). This article was amended in 1996 to provide that "summary judgment procedure is designed to secure the just, speedy, and inexpensive determination of every action... The procedure is favored and shall be construed to accomplish these ends." La.Code Civ. P. art. 966(A)(2). In 1997, the legislature enacted La.Code Civ. P. art. 966(C)(2), which further clarified the burden of proof in summary judgment proceedings, providing:
The burden of proof remains with the movant. However, if the movant will not bear the burden of proof at trial on the matter that is before the court on the motion for summary judgment, the movant's burden on the motion does not require him to negate all essential elements of the adverse party's claim, action, or defense, but rather to point out to the court that there is an absence of factual support for one or more elements essential to the adverse party's claim, action, or defense. Thereafter, if the adverse party fails to produce factual support sufficient to establish that he will be able to satisfy his evidentiary burden of proof at trial, there is no genuine issue of material fact.
This amendment, which closely parallels the language of Celotex Corp. v. Catrett, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986), first places the burden of producing evidence at the hearing on the motion for summary judgment on the mover (normally the defendant), who can ordinarily meet that burden by submitting affidavits or by pointing out the lack of factual support for an essential element in the opponent's case. At that point, the party who bears the burden of persuasion at trial (usually the plaintiff) must come forth with evidence (affidavits or discovery responses) which demonstrates he or she will be able to meet the burden at trial. See MARAIST AND LEMMON, LOUISIANA CIVIL LAW TREATISE: CIVIL PROCEDURE, § 6.8 (1999). Once the motion for summary judgment has been properly supported by the moving party, the failure of the non-moving party to produce evidence of a material factual dispute mandates the granting of the motion. Hardy v. Bowie, 98-2821 (La.9/8/99), 744 So.2d 606; Hayes v. Autin, *292 96-287 (La.App. 3d Cir.12/26/96), 685 So.2d 691, writ denied, 97-0281 (La.3/14/97), 690 So.2d 41.
The Louisiana Supreme Court examined the developmental history of the tort of defamation recently in Trentecosta v. Beck, 96-2388 (La.10/21/97); 703 So.2d 552. Citing the Restatement (Second) of Torts § 558 (1977) in its analysis, the supreme court recognized the four elements a plaintiff is required to prove in order to be successful in a defamation case: "(1) [A] false and defamatory statement concerning another; (2) an unprivileged publication to a third party; (3) fault (negligence or greater) on the part of the publisher; and (4) resulting injury." Id. at 559. While all four elements are at issue in the litigation, the only one at issue in this appeal is the fault element.
As pointed out by the supreme court in Trentecosta, prior to the United States Supreme Court decision in New York Times v. Sullivan, 376 U.S. 254, 84 S.Ct. 710, 11 L.Ed.2d 686 (1964), "the common law imposed strict liability for publishing a defamatory statement about a person that turned out to be false." Id. The supreme court further noted:
In the Sullivan case, the Court ruled that the First Amendment prohibits a public official from recovering damages in a defamation action unless the official proves by clear and convincing evidence that the person publishing the offending statement did so with "actual malice" that is, the publisher had knowledge of the statement's falsity or made the statement with reckless disregard of whether it was false or not.
Id. at 560.
Further, as recognized by the supreme court, "[t]his constitutional limitation was extended to `public figures' in Curtis Publishing Co. v. Butts, 388 U.S. 130, 87 S.Ct. 1975, 18 L.Ed.2d 1094 (1967)." Id.
Both Anders and Boney are public officers as defined in the Sullivan ruling. See Trentecosta, 703 So.2d at 560 n. 12; FRANK L. MARAIST & THOMAS C. GALLIGAN, LOUISIANA TORT LAW, § 19-2(b), p. 433 (1996). Thus, they must prove by clear and convincing evidence that Andrus made the defamatory comments with actual malice, i.e., he did so with knowledge of the statements' falsity or made the statements with reckless disregard of whether they were false or not.
As recognized by the trial court, this "actual malice" requirement makes defamation of a public official an intentional tort, an act excluded from coverage by the Odyssey policy. Therefore, we find no error in the trial court's summary judgment grant.

DISPOSITION
We affirm the judgment of the trial court dismissing Odyssey Reinsurance Company as a party defendant and remand these consolidated matters to the trial court for further proceedings against the remaining defendant, Tracy Andrus. All costs of this appeal are taxed equally against Donald W. Anders, Jr., and Brian Boney.
AFFIRMED AND REMANDED.
SAUNDERS, J., DISSENTS AND ASSIGNS WRITTEN REASONS.
SAUNDERS, J., dissenting.
I respectfully disagree with the majority's opinion. I would find that the trial judge erred in granting Odyssey's motion for summary judgement and would reverse.

EXCLUSIONARY CLAUSE
In his oral reasons for judgment, the trial judge noted that in paragraph ten of Anders' petition, he made the allegation that Andrus had accused him of a criminal act which constitutes defamation per se, by definition, is an intentional tort. The trial judge further found that the language of the policy was clear and that the language excluded intentional torts. The trial judge therefore concluded that summary judgment *293 was proper because defamation per se was an intentional tort and because intentional torts were excluded under the Odyssey policy.
The applicable section of the policy is Section I-Exclusions. Under this section, the policy states that coverage excludes intentional loss. The policy defines intentional loss as, "any loss arising out of any act committed: a. By or at the direction of an `insured'; and b. With the intent to cause a loss."
In their petition, the Plaintiffs alleged that Andrus defamed them. Defamation is an invasion of a person's interest in his reputation and good name. Sassone v. Elder, 626 So.2d 345 (La.1993). The essential elements for a successful action in defamation are: "(1) a false and defamatory statement concerning another; (2) an unprivileged publication to a third party; (3) fault (negligence or greater) on the part of the publisher; and (4) resulting injury." Trentecosta v. Beck, 9602399, p. 7 (La. 10/21/97); 703 So.2d 552, 559.
In order to prevail in a defamation action, the plaintiff must prove that the defendant, with actual malice or other fault, published a false statement with defamatory words which caused the plaintiff damages. See Trentecosta, 96-2388; 703 So.2d 552; Sassone, 626 So.2d 345. As recognized in Williamson v. Historic Hurstville Ass'n, 556 So.2d 103 (La.App. 4 Cir. 1990), defamation is not exclusively an intentional tort. Defamation may occur through negligent acts. See Melder v. Sears, Roebuck and Co., 98-0939 (La.App. 4 Cir. 3/31/99); 731 So.2d 991; Williamson, 556 So.2d 103. Accordingly, in order to make a successful allegation of defamation, a plaintiff does not have to prove that a defendant acted intentionally. Instead, a plaintiff may bring a successful claim for defamation where a defendant's publication is merely negligent.
In the instant case, the trial judge accepted Odyssey's argument that a statement which is defamatory per se id, by definition, intentional. A statement which is defamatory per se is one in which the "words themselves have a natural tendency to injure a person in his occupation or to injure his reputation, even without considering extrinsic facts or surrounding circumstances...." Lemeshewsky v. Dumaine, 464 So.2d 973, 975 (La. App. 4 Cir. 1985). Words which impute criminal action to another are defamatory per se. Trahan v. Ritterman, 368 So.2d 181 (La.App. 1 Cir.1979). When the alleged defamatory words are found to be defamatory per se, falsity and malice are presumed, and the defendant bears the burden of rebutting that presumption. Id.
In the instant case, the trial judge found that the allegations of defamation in the Plaintiffs' petition were defamatory per se. While this is a valid finding it is important to note that, it does not necessarily follow that the defamation at issue was intentional on the part of Andrus. Finding a statement to be defamatory per se simply lessens a plaintiff's burden of proof. If a statement is found to be defamatory per se, falsity and malice are presumed.
In the case at hand, Andrus stated that he did not intend to harm Anders or Boney through his statements. Andrus asserts that he made those statements to inform the public about the actions of the police officers in connection with his ongoing criminal prosecution. Here, although it may be fair to say that Andrus intended to speak the words, it is not fiar to presume that he intended the harm. Where the act is intentional, but the injury is not, the courts of this state have repeatedly held that such an exclusionary clause is not applicable, Williamson, 556 So.2d 103; See Sabri v. State Farm Fire & Casualty, 488 So.2d 362 (La.App. 3 Cir.) writ not considered, 493 So.2d 630 (La. 1986); Sherwood v. Sepulvado, 362 So.2d 1161 (La.App. 2 Cir. 1978); Bourque v. Duplechin, 331 So.2d 40 (La.App. 3 Cir), writ refused, 334 So.2d 210 (La.1976), writ not considered, 334 So.2d 230 (La.1976).
*294 After a review of the policy provisions and of the record, I am convinced that the Odyssey policy does not unambiguously exclude coverage. Since a material issue of fact exists at to whether Andrus intentionally made the defamatory statements or was simply negligent in making them, the trial court erred in granting Odyssey's motion for summary judgement on the issue.

ACTUAL MALICE
In its opinion, the majority states that the Plaintiffs are public officers as defined in the New York Times v. Sullivan, 376 U.S. 254, 84 S.Ct. 710 (1964); therefore, they must prove by clear and convincing evidence that Mr. Andrus made the defamatory statements with actual malice. Thus, the majority concludes that the "actual malice" requirement makes defamation of a public official an intentional tort, an act excluded from coverage by the Odyssey policy.
I respectfully disagree with the majority's conclusory statement that the Plaintiffs are public officers. Before the actual malice standard applies, the Defendants, must prove that the Plaintiffs were public officials or public figures, therefore entitling them to the defense of privilege. This claim of privilege would be one of "qualified privilege" based on Andrus' right of fair comment and criticism on public matters. See Madison v. Bolton, 102 So.2d 433, 234 La. 997 (1958), reversed on other grounds, Schaefer v. Lynch, 406 So.2d 185 (La.1981); Martin v. Markley, 11 So.2d 593, 202 La. 291 (1942). The defense of privilege, whether absolute or qualified is an affirmative defense. See Douglas v. Thomas, 31-470 (La.App. 2 Cir. 2/24/99)/ 728 So.2d 560, writ denied, 99-0835 (La. 5/14/99); 741 So.2d 661; Albarado v. Abadie, 97-478 (La.App. 5 Cir. 11/12/97); 703 So.2d 736, writ denied, 97-3081 (La. 2/13/98); 709 So.2d 756; Trahan v. Ritterman, 368 So.2d 181 (La.App. 1 Cir. 1979); See also Rosenbloom v. Metromedia, Inc., 403 U.S. 29, 91 S.Ct. 1811 (1971).[1]
Because issues of fact remain as to: 1) whether Andrus' actions were intentional or merely negligent, and 2) whether the Plaintiffs are public officials or public figures, summary judgment in this instance is not proper. Accordingly, I would reverse the trial court's summary judgment and remand this case for further proceedings.
NOTES
[1] In Rosenbloom, 403 U.S. 29, 91 S.Ct. 1811, 1817, the Supreme Court noted,

Pennsylvania has also enacted verbatim the Restatement's provisions on burden of proof, which place the burden of proof for the affirmative defenses of truth and privilege upon the defendant.
(2) in an action for defamation, the defendant has the burden of proving, when the issue is properly raised:
. . .
(a) The truth of the defamatory communication;
(b) The privileged character of the occasion on which it was published;
(c) The character of the subject matter of defamatory comment as of public concern. See Restatement of Torts § 613.