STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

CA 08-370

ANGELO & SON, LLC, ET AL.

VERSUS

ANGELO PIAZZA, JR., ET AL.

**********

APPEAL FROM THE
TWELFTH JUDICIAL DISTRICT COURT
PARISH OF AVOYELLES, NO. 2006-9774-B
HONORABLE WILLIAM BENNETT, DISTRICT JUDGE

**********

OSWALD A. DECUIR
JUDGE

**********

Court composed of Oswald A. Decuir, Michael G. Sullivan, and Billy Howard Ezell,
Judges.

Ezell, Judge, dissents and assigns written reasons.

AFFIRMED.


Richard E. Lee
Attorney at Law
810 Main Street
Pineville, LA 71360
(318) 448-1391
Counsel for Defendants/Appellants:
    Angelo Piazza, Jr.
    Patricia Piazza

Gregory Norman Wampler
Lemoine & Wampler
607 Main Street
Pineville, LA 71360
(318) 473-4220
Counsel for Defendants/Appellants:
    Angelo Piazza, Jr.
    Patricia Piazza

**Jeremy C. Cedars**
**Attorney at Law**
**P. O. Drawer 1791**
**Alexandria, LA 71309-1791**
**(318) 445-3631**
**Counsel for Plaintiffs/Appellees:**
     **Angelo & Son, L.L.C.**
     **Charles Tobey**
     **Christine Tobey**

**DECUIR, JUDGE.**

Christine and Charles Tobey, along with the limited liability company they organized, Angelo & Son, L.L.C., filed suit alleging damages as a result of the purchase of Christine's parents' used car dealership and house. The suit was filed against Christine's parents, Patricia and Angelo Piazza; Christine's brother, Sam Piazza; and Sam's used car business. Christine and Charles sought rescission of the sale of the used car business and house alleging failure of cause, fraudulent inducement, detrimental reliance, unfair trade practices, and defamation. The trial court rescinded the sale of the house and business based on failure of cause and detrimental reliance. The trial court also found the Tobeys had proven defamation and awarded them $50,000.00 in damages. Only Patricia and Angelo Piazza were found liable, and they appeal the judgment of the trial court.

## FACTS

As they began to approach retirement age, Angelo and Patricia discussed the sale of their used car business with all of their children. Charles and Christine became interested in running the business because Charles wanted to quit working overseas and stay at home with his family. The Piazzas wanted to retire from the used car business and spend more time at their camp. Angelo wanted to do other things such as raise hogs and host benefits. After a year of discussions and planning, Charles and Christine decided to purchase the house and five acres of surrounding property. The used car business located on the property of the family home was not included in the sale documents but was effectively transferred to the Tobeys at the same time. The parties agreed that Angelo would help the Tobeys get started and Patricia would help with the book work as needed. Charles quit his job where he was making $90,000 a year, and Christine quit her job as a nurse making $30,000 a year.

The house and 5.68 acres appraised for $260,000.00. An act of cash sale from

Patricia and Angelo to Charles and Christine was executed on February 4, 2005, for $260,000.00. Testimony revealed that the Piazzas gave the Tobeys a check for $10,000.00 to help with the closing costs. Christine testified that her parents did not want the business mentioned in the sale for tax reasons.

The Tobeys went to Evangeline Bank and Trust Company to obtain floor plan financing for the purchase of cars. The initial floor plan was for $150,000.00. The Tobeys bought most of the Piazzas' current inventory of used cars except for two or three that had been on the lot for over a year, which the bank did not want them to purchase. A total of eleven cars was purchased.

Charles was still overseas when Christine initially got the business up and running. By the time Charles returned in March 2005, the relationship between Christine and her father had turned sour. From the record, it appears that Angelo disagreed with the way Christine wanted to run things, specifically her decision not to purchase more cars when she had reached her credit limit. A heated discussion ensued, involving both business and family concerns, and Christine told Angelo not to come back.

After that, the Tobeys testified, Angelo set out to ruin their business. Charles testified that Angelo would bid against him at car auctions. The Piazzas placed an advertisement in the classified section of the local newspaper wherein they publicly distanced themselves from the business. Angelo made negative comments to third parties about the Tobeys' inventory which had no basis in fact. At the same time, however, Angelo helped his youngest son, Sam, set up a used car business, Sam's Auto Sales, just down the road from the Tobeys' business. Angelo became the salesman at the new business, while Sam continued working at his previous job.

2

In August 2006, the Tobeys filed the present lawsuit. Trial in the matter was held on July 17, 18, and August 23, 2007. The trial court found the "principal cause in purchasing the Piazza property was the understanding that Piazza would retire but aid Tobey in the operation of the business," and the Tobeys would not have purchased the business otherwise. The court found that the evidence established both a failure of cause and detrimental reliance and ordered the contract rescinded. While the allegations of fraud and unfair trade practices were rejected, the trial court did find that Angelo defamed the Tobeys in that he made statements to third parties to harm the business and reputation of the Tobeys and to deter potential customers from dealing with the Tobeys. Damages in the amount of $50,000.00 were awarded. Both Patricia and Angelo appeal this decision.

## FAILURE OF CAUSE AND DETRIMENTAL RELIANCE

The trial court wrote extensive reasons for judgment. In finding a failure of cause and detrimental reliance, the trial court stated:

> In the case at bar the cause for the contract was clearly the decision by Piazza to retire from the used car business, with the exception of aiding Toby [sic] in the operation of the business. Piazza was clearly aware that this was the **cause** without which the Tobey's [sic] would not have entered into the contract to purchase the home and business. The principal cause in purchasing the Piazza property was the understanding that Piazza would retire but aid Tobey in the operation of the business. This is abundantly clear through the testimony of the parties and all witnesses, which testimony confirms that the contract was completed as originally agreed upon even to the extent that Piazza aided Tobey in the acquisition of a floor plan/credit line and did initially aid Tobey in the operation of the business. Piazza was to "do the buying and give Tobey the benefit of his experience." Once the contract was completed, these terms were followed. Unfortunately, change occurred.
>
> . . . .
>
> In the case at bar it is clear that Tobey relied on Piazza's assertions and promises that they would not only retire but would aid Tobey in the operation of the business.
>
> . . . .

3

This Court is absolutely convinced that Angelo Piazza, Jr. convinced Sam Piazza to secure a license and open a business with the understanding that his father, Angelo Piazza, Jr. would run the business and Sam would simply receive the profits. It is also abundantly clear, from all of the evidence referenced hereinabove, that Angelo Piazza, Jr. began a calculated attempt to sink the Tobey's [sic] and ruin their business. This is gross and distasteful in the course of regular business, much less in the course of family affairs. Angelo Piazza, Jr.'s continued statement during his testimony that he would "help any of his children if they asked" is not borne out by the evidence and by the actions he undertook.

The evidence therefore proves, more probable than not, that based on failure of cause <u>and</u> detrimental reliance, the contract is to be rescinded.

Failure of Cause

"Cause is the reason why a party obligates himself." La.Civ.Code art. 1967.

In "A Refresher Course on Cause," 12 La.L.Rev. 2 (1951), Professor J. Denson Smith

explained:

> Without giving more detailed consideration to the function of cause in characterizing contractual obligations, the concept plays an important role also in the resolution of questions involving the effect of error, duress, or illegality. In this respect it is well to recall to mind the emphasis placed by the French on the legal efficacy of the will, the great scope given to it and its elevation to the status of law made by the parties for themselves. As a necessary corollary to the principle that an individual should have the utmost freedom to bind himself by willing to do so, it follows that he should not be bound without having so willed. This results in the principle that where consent is given in error – which covers also cases involving consent secured through fraud, or duress, a real will to bind is lacking and the expression of consent is thereby vitiated. Hence the rule that error as to the principal cause of a contract destroys the validity of the consent. Although different categories of error are dealt with, such as error as to the object, or the person, or the cause, it has been said, and with good reason, that error as to the cause comprehends all kinds of error.

Error can vitiate consent, so that a contract may be rescinded based upon error.

La.Civ.Code art. 1948. Article 1950 of the Civil Code describes an error which may

4

concern cause as anything which the parties "should in good faith have regarded, as a cause of the obligation." The jurisprudence upholds the principle that a contract may be rescinded once a failure of cause is shown:

> [W]e find that there was error as to the nature of the contract. Consequently, a party may rescind a contract when the error of cause is on the nature of the contract, on the thing that is the contractual object or on a substantial quality of that thing. La.C.C. Arts. 1950, 1952; *Matter of Adoption of Smith*, 578 So.2d 988 (La.App. 4 Cir.1991), *writ denied,* 581 So.2d 687 (La.1991).

*Dugas v. Adoption of Dugas*, 614 So.2d 228, 232 (La.App. 3 Cir. 1993). Further, "[e]rror vitiates consent only when it concerns a cause without which the obligation would not have been incurred and that cause was known or should have been known to the other party." La.Civ.Code art. 1949.

In the case before us, the Tobeys showed that the cause of their contract with the Piazzas, *i.e.*, the reason without which the Tobeys never would have entered into the used car business, failed. Angelo initially expressed an intent to retire, offered to teach the Tobeys and assist in the business, and obviously desired to keep the business going. The Tobeys gave up a better home and more secure income for the goodwill of a family business and the chance to continue it and perhaps improve it. Within weeks, however, Angelo started a new business, failed to assist with the Tobeys' business, and actively tried to sabotage it. The business was no longer a "family business" as both Angelo and Patricia publicly distanced themselves from it.

This case is about the combination of business and familial considerations that constitute the cause of this disputed contract. When the Piazzas changed course, the Tobeys' consent to the terms of the contract was vitiated. Goodwill, family ties, helping a father ease into well-deserved retirement – all of these factors disappeared, and the Tobeys were left with a business and house they may have never really wanted in the first place, but for the family considerations. We find no manifest error

in the trial court's conclusion that the Tobeys' consent to the contract with the Piazzas was vitiated by a failure of cause.

Detrimental Reliance

The doctrine of detrimental reliance is found in Louisiana Civil Code Article 1967:

> A party may be obligated by a promise when he knew or should have known that the promise would induce the other party to rely on it to his detriment and the other party was reasonable in so relying. Recovery may be limited to the expenses incurred or the damages suffered as a result of the promisee's reliance on the promise. Reliance on a gratuitous promise made without required formalities is not reasonable.

The supreme court in *Suire v. Lafayette City-Parish Consolidated Government*, 04-1459, 04-1460, 04-1466, p. 31 (La. 4/12/05), 907 So.2d 37, 59, discussed the application of detrimental reliance as follows:

> The doctrine of detrimental reliance is " 'designed to prevent injustice by barring a party from taking a position contrary to his prior acts, admissions, representations, or silence.' " *Babkow v. Morris Bart, P.L.C.*, 1998-0256 (La.App. 4 Cir. 12/16/98), 726 So.2d 423, 427 (quoting *Orr v. Bancroft Bag, Inc.*, 29,046 (La.App. 2 Cir. (1/22/97), 687 So.2d 1068, 1070)). To establish detrimental reliance, a party must prove three elements by a preponderance of the evidence: (1) a representation by conduct or word; (2) justifiable reliance; and (3) a change in position to one's detriment because of the reliance. *Lakeland Anesthesia, Inc. v. United Healthcare of La., Inc.*, 2003-1662 (La.App. 4 Cir. 3/17/04), 871 So.2d 380, 393, *writ denied*, 2004-0969 (La.6/25/04), 876 So.2d 834; *Babkow*, 726 So.2d at 427. Significantly, to prevail on a detrimental reliance claim, Louisiana law does not require proof of a formal, valid, and enforceable contract. *Babkow*, 726 So.2d at 429 (citing *Morris v. People's Bank & Trust Co.*, 580 So.2d 1029 (La.App. 3 Cir.), *writ denied*, 588 So.2d 102 (La.1991)).

We find no error in the trial court's conclusion that the Tobeys relied on Angelo's and Patricia's promises of retiring from the used car business and teaching them the business as reasons for their purchase of the house and land.

Noncompetition Agreement

The Piazzas argue that there was no valid noncompetition agreement. They contend that the promise to retire is essentially a promise not to compete with the Tobeys. Louisiana law requires that certain formalities must be observed in order to have a valid noncompetition agreement. *See,* Louisiana Revised Statutes 23:921(B).

"Louisiana courts have consistently held that an agreement not to compete is enforceable when it is part of the consideration for the sale of a business and its goodwill, and as long as the terms of the agreement are reasonable." *Barnett v. Jabusch*, 607 So.2d 1007, 1008-9 (La.App. 3 Cir. 1992), *writ denied*, 610 So.2d 820 (La.1993). Nevertheless, Louisiana has a strong public policy disfavoring noncompetition agreements. *SWAT 24 Shreveport Bossier, Inc. v. Bond*, 00-1695 (La. 6/29/01), 808 So.2d 294. "Because such covenants are in derogation of the common right, they must be strictly construed against the party seeking their enforcement." *Id*. at 298.

The Piazzas equate the promise to retire with a noncompetition agreement. However, because their promise to retire did not comply with the formal requirements of a noncompetition agreement, it is, they argue, invalid. The Piazzas contend that while the failure of the Piazzas to adhere to an agreement to retire may have been a reason to rescind the contract of sale for failure of cause and the Tobeys may have detrimentally relied on the promise to retire, the fact is that there was no valid agreement as required by La.R.S. 23:921(B). Because there cannot be failure of cause or detrimental reliance on an invalid agreement, they urge this court to find the trial court erred in rescinding the contract. We disagree.

The absence of a valid noncompetition agreement is not a material issue in this case. The Piazzas' expressed intention to retire cannot be equated with a promise not

to compete in the used car business. While the testimony shows that the Tobeys were offended by the Piazzas' actions in setting up Sam's Auto Sales and working there, they did not seek to enjoin the operation of the new business. They also did not seek damages resulting from the operation of Sam's Auto Sales. The competition created by Sam's Auto Sales is immaterial. Rather, the question presented is whether the Tobeys relied to their detriment on a contract whose cause has failed due to the actions of the Piazzas. The issue of whether a valid noncompetition agreement exists is a convenient creation by the defense attorney to divert attention from the real issue. It is simply digressive and without merit.

## DEFAMATION

The Piazzas contend the trial court committed manifest error when it found that Angelo committed the intentional tort of defamation. They deny that Angelo made any defamatory statements about the Tobeys.

In order to establish a defamation claim, a party must establish four elements: (1) a false and defamatory statement; (2) an unprivileged publication or communication to a third party; (3) fault on the part of the publisher; and (4) resulting injury. *Andrus v. Andrus*, 00-552, 00-553 (La.App. 3 Cir. 12/6/00), 773 So.2d 289, *writ denied*, 01-66 (La. 3/23/01), 788 So.2d 427 (*citing Trentecosta v. Beck*, 96-2388 (La. 10/21/97), 703 So.2d 552).

The trial court specifically found that:

> Angelo Piazza, Jr. made statements to third parties in an effort to harm the business reputation of Tobey and to deter persons from dealing with Tobey. Angelo Piazza, Jr.'s statements that he was "going to burn them;" "going to ruin them;" "criticisms on their treatment of customers;" "criticisms of the quality of the vehicles they were selling;" and all of his actions were clear that these statements were made in an effort to hurt Tobey.
>
> As confirmed in this Court's review of the testimony, they were published to third parties and were defamatory in their meaning. It is

clear from the demeanor of Angelo Piazza, Jr. and the entirety of the evidence that not only was there a lack of reasonable belief in the truth of these statements, but they were made with the intent to hurt Tobey. Also, there is absolutely no evidence to indicate that any of the statements concerning the Tobey's treatment of their customers and/or the quality of the cars made by Angelo Piazza, Jr. were true statements. It is also quite clear that these defamatory words caused damage to Tobey's business.

Our review of the testimony at trial confirms that Angelo did make defamatory remarks about the Tobeys and the cars they were selling to third parties. There was no manifest error in the trial court's decision.

The Piazzas further claim that because the Tobeys have proven no loss of income, no damages should be awarded for the defamation. They argue that the Tobeys exceeded the Piazzas 100 cars per year in 2005 and 2006, and that in 2006 they sold 188 cars, which was just two short of the best year of the Piazzas when they sold 190 cars. Alternatively, the Piazzas contend that even if we find that the Tobeys are entitled to damages, the award of $50,000.00 is too high.

"The injury resulting from a defamatory statement may include nonpecuniary or general damages such as injury to reputation, personal humiliation, embarrassment and mental anguish even when no special damage such as loss of income is claimed." *Costello v. Hardy*, 03-1146, p. 14 (La. 1/21/04), 864 So.2d 129, 141.

There is no doubt that Angelo's statements to other people about his daughter and son-in-law caused emotional distress for the Tobeys. The embarrassment and humiliation suffered by the Tobeys when Christine's own father set out to destroy their business was clear. Consequently, while the $50,000.00 award to the Tobeys may be somewhat high, we cannot say it was an abuse of discretion.

The Piazzas' last assignment of error concerns the assessment of the defamation damages against Patricia. The Piazzas are correct that an obligation resulting from an intentional wrong is a separate obligation when it is not perpetrated

9

for the benefit of the community. La.Civ.Code art. 2363. Obligations incurred by a spouse during the existence of a community property regime are presumed to be community obligations. La.Civ.Code art. 2361; *Bridges v. Bridges*, 96-1191 (La.App. 3 Cir. 3/12/97), 692 So.2d 1186. However, this presumption is rebuttable only upon "proof by clear and convincing evidence that the debt was not incurred for the benefit of the community. La.Civ.Code art. 2363; *Keene v. Reggie*, 96-740 (La.App. 3 Cir. 10/22/97), 701 So.2d 720." *Succession of Moss,* 00-62, p. 5 (La.App. 3 Cir. 6/21/00), 769 So.2d 614, 618, *writ denied*, 00-2834 (La. 12/8/00), 776 So.2d 462.

The record is replete with evidence of Patricia's complicity in the actions of Angelo. She did not meet her burden of rebutting, with clear and convincing evidence, the presumption of a community obligation in the award of defamation damages. Accordingly, we find no error with the trial court's assessment of defamation damages against Patricia.

## DECREE

For the reasons set forth in this opinion, the judgment of the trial court finding that the Tobeys proved a failure of cause and detrimental reliance and ordering the rescission of the sale of the house and land, in addition to ordering the Piazzas to purchase the vehicle inventory of Angelo & Son, L.L.C., is affirmed. The judgment ordering Angelo and Patricia Piazza to pay $50,000.00 to the Tobeys is also affirmed. The Piazzas are assessed with the costs of this appeal.

**AFFIRMED.**

ANGELO & SONS, LLC, ET AL.

VERSUS

ANGELO PIAZZA, JR., ET AL.


**EZELL, JUDGE, DISSENTS:**

I disagree with the majority that the Tobeys established a failure of cause and detrimental reliance requiring the rescission of the sale of a house and land, including the repurchasing of inventory which no longer even existed as it was at the time of the sale. A lot of emphasis is placed on the fact that this was a family business and the Tobeys would never have bought the business otherwise. However, not only was it convenient for the Tobeys to purchase an already-established business, Charles wanted to quit working overseas and both Charles and Christine wanted the family home. Even the trial court agreed that the Tobeys made more money in the used car business than their prior combined income. I agree that unfortunate family disputes and confrontations arose as a result of the sale, but I disagree that this is a reason to rescind the sale of the home. I do not agree with the majority opinion that the noncompetition agreement was a convenient creation by the defense attorney to divert attention from the real issue.

During her testimony, Patricia testified that before the Tobeys bought the business Christine wanted to insure that the Piazzas would not go into business and compete with them and inquired about seeing an attorney. Patricia offered to go to an attorney but Christine told her that she was not concerned. Patricia did not think

it would be a problem either because they were certain that the Tobeys would continue to let Angelo help them with the business.

Louisiana law requires that certain formalities must be observed in order to have a valid noncompetition agreement. Louisiana Revised Statutes 23:921(B) provides:

> Any person, including a corporation and the individual shareholders of such corporation, who sells the goodwill of a business may agree with the buyer that the seller or other interested party in the transaction, will refrain from carrying on or engaging in a business similar to the business being sold or from soliciting customers of the business being sold within a specified parish or parishes, or municipality or municipalities, or parts thereof, so long as the buyer, or any person deriving title to the goodwill from him, carries on a like business therein, not to exceed a period of two years from the date of sale.

"Louisiana courts have consistently held that an agreement not to compete is enforceable when it is part of the consideration for the sale of a business and its goodwill, and as long as the terms of the agreement are reasonable in its limitation of duration and territory covered." *Barnett v. Jabusch*, 607 So.2d 1007, 1008-09 (La.App. 3 Cir. 1992), *writ denied*, 610 So.2d 820 (La.1993).

Louisiana has a strong public policy disfavoring noncompetition agreements. *SWAT 24 Shreveport Bossier, Inc. v. Bond*, 00-1695 (La. 6/29/01), 808 So.2d 294. Louisiana also has a long-standing public policy to prohibit or severely restrict such agreements. *Id.* "Because such covenants are in derogation of the common right, they must be strictly construed against the party seeking their enforcement." *Id.* at 298.

No agreement was ever reached as to the territory in which the Piazzas would be restricted from operating a used car business. Obviously, retirement anticipated a longer term than two years, so the duration of the noncompetition agreement is also invalid. Therefore, any agreement that the Tobeys and Piazzas had regarding noncompetition is invalid. While the failure of the Piazzas to adhere to an agreement

to retire may have been a reason to rescind the contract of sale for failure of cause and the Tobeys may have detrimentally relied on the promise to retire, the fact is that there was no valid agreement as required by La.R.S. 23:921(B).

Simply put this is a dispute between family members which the parties are trying to rectify through the court system. I agree that the Tobeys relied on Angelo's and Patricia's promises of retiring from the used car business as one of the reasons they bought the house and land. I also do not condone the father's actions and find that his actions were not that of a loving father. However, I find that the Tobeys are seeking to prevent him from competing with their business and there was no valid noncompetition agreement. Where there is an invalid agreement, there cannot be failure of cause or detrimental. Therefore, I find that the trial court erred in rescinding the contract.

I am in agreement with the majority that Angelo did make defamatory remarks about the Tobeys and the cars they were selling to third parties. I also agree that the $50,000 award to the Tobeys was not an abuse of discretion. However, I disagree with the majority that Patricia should be assessed with the defamation damages. There was no evidence whatsoever that Patricia made any defamatory statements about the Tobeys. There was also no evidence that Angelo's statements were for the benefit of the community. His statements were made for his own personal gratification.

The majority fails to address the issue relative to the purchase of inventory that was present at the time of sale and the inventory presently existing in the LLC created after the sale between the parties to this lawsuit. There seems to me that there is no privity of contract between the Defendants and the LLC. The fact is, the LLC did not exist when the purchase of the home and business was complete.

How were the Plaintiffs damaged? The house is not defective, and the

Plaintiffs made more than they previously made from their previous employment.

Therefore, I must respectfully dissent from the majority.